Oral argument not to exceed 15 minutes per side. Russell Bensing for the appellant. May it please the court, my name is Russ Bensing. I'm here on behalf of Ronald Kelly this morning. I'd like to reserve four minutes of my time for rebuttal. The sole issue in this case is whether Greg Roby's strategic decision to forego instructions on lesser included offenses and pursue total acquittal was a reasonable one under Strickland. There's a tendency, I believe, to focus solely on that decision. And I don't think that that's appropriate in this case. Because when we talk about strategic decisions of counsel, we're talking, we give a great deal of deference to that. But I think you have to look at the totality of the trial lawyer's decisions. If he is making wildly unreasonable strategic decisions in other aspects of the case, I think that the deference that is ordinarily due begins to erode. I think that it undermines our confidence that his decision in this particular case was a result of careful and studied analysis. And that's what we have here. We have a pattern of wildly unreasonable professional judgments. The first one being the decision to give this case, the appeal of this case, to his wife. One of the ways of winning an appeal in a criminal case is to show that counsel was ineffective. I mean, I recognize the difficulties with that decision. But I thought you started out exactly where I was, reading your statement of issues. It's got to have been an unreasonable decision to start with. If it wasn't, then there's no ineffectiveness of appellate counsel for not raising it. And I agree with that, Your Honor. What I'm suggesting here is simply that the other judgments made by this attorney reflect on his overall decision-making ability. And if he's making unprofessional decisions. Are there any cases that would hold that? I mean, because that sounds like you say, you know, the guy gets drunk and gambles wildly. At the same time, he's, you know, stone sober doing all of his legal duties. You say, well, he's a bad guy. He makes bad decisions. Are there any cases that would really support making that kind of judgment? I think it's supported by logic, Your Honor. You're not talking about a situation where this guy made decisions, professional decisions, or decisions other than in his professional capacity. It's not that he went out and gambled wildly and lost a lot of money. These are decisions that he made as a lawyer. Your wife may be kind of. Okay. Well, he happened to be going through a divorce at the time, so. Well, let's focus, at least for me, let's focus on why do you say that it's unreasonable, strickland unreasonable, to take, what is it? I mean, this is the decision to go for an all or nothing strategy. Obviously, it's a risky one. But if you win, it's a high value. You say, well, you know, he could have gotten a much lesser sentence. That's right. But if you had any reasonable belief that he could walk, and I take it this was what the defendant wanted to do as well. He's not bound by it, but it's, you know, if the guy says, I'm going to be a terrible witness, don't put me on, as opposed to, hey, I can talk my way out of this. Well, I think, to respond in a couple of ways. First of all, as far as the defendant's decision with regard to this, there's nothing in the record which would indicate that the defendant participated in the decision. And plus, you're talking about a 20-year-old kid who had no experience whatsoever with the criminal justice system. So the idea that he's calling the shots here, I don't think there's any support in the record for that. He's dealing with an experienced attorney, and I think that he would have gone any way that the attorney chose to go. I don't think it was the defendant's choice to go with an all-or-nothing strategy. That was the decision of the attorney. And I think that it's defective for the following reasons. First of all, this isn't a decision that's made in the heat of the moment. We give great deference to decisions of counsel because many of them are made in the heat of the moment. Did counsel tell the petitioner that he was wanting to do this? And did Kelly say anything about, yeah, let's do it that way or not? There's nothing in the record which would indicate that. Incidentally, whatever happened to the Barker case, that's not in the record either, did it? Barker was convicted in the second trial. After the next trial, convicted of murder? Yes. Okay. He was convicted of the same offenses as he'd been convicted of in the original trial. So that would indicate that probably Kelly would have been too, right? Well, I don't think so because there's one important – there's several important differences between the two cases, and that's what I'm getting into as far as why the decision was unreasonable. This, as I said, is not a decision that was made in the heat of the moment. He had ample time to consider this. This is a decision that's made by trial counsel in any case in which there are lesser included offenses available. So you look at what he knew before going into that trial. This is what he knew. First of all, he knew what the lesser included offenses were and the great benefit they would have conferred upon the defendant. Yes, a total acquittal strategy does have a benefit, but there's a substantial benefit in getting a three-year sentence instead of a 15-year sentence, and that was the difference between the penalties. Second of all, he knew that he had no evidence to support his client's testimony. There were no witnesses who could corroborate his client's testimony as to what happened that night. But that's what his client said. Well, that's what his client said, but he knew that he had no other evidence to support that. You don't make a decision just, well, if the client tells me this, then it must be true, and the jury's going to believe it. But why isn't it a reasonable – a plausible – you know, the standard is fairly high to say, look, we've got lots of witnesses here. The other people that he wants to throw it off on, they're kind of scummy too. He may testify better than the other witnesses. There's two. First of all, the other witnesses that testified against him, one was a potential co-defendant. All of the others, and there I believe were ten witnesses total who testified against him, all of them were independent witnesses. None of them had anything, any connection to him prior to this point. And what's more important – All kind of college students or – College students. In that age. Yes, yes, yes. They may not have been involved in the fight, but they're kind of around it. Oh, they weren't involved in the fight, but they were – this took place in a heavily traveled street. So there were ample number of witnesses. It's not a bunch of church-going ladies in rural Iowa. If I'm his lawyer, I say I think I can make him look better than these other folks. Well, there's one problem with that, Your Honor, and I agree with you. Ohio has open discovery. He would have had all the witness statements, but he could have very easily said – and it's common knowledge that some witnesses write a great statement and they fold on the stand. But here's the thing. Barker's trial was tried before his, a month before his. He knew that the same witnesses had testified in Barker's case, as would testify in his, and he knew that the jury believed that testimony. So this isn't a situation where he goes into it with the idea of, well, they're not going to believe these witnesses. They did in Barker's case. And Barker got – Barker got convicted. Of murder. Yes, of murder. And notably, he got convicted not only of felony murder, as did Kelly, he got convicted of intentional murder, 29-2302A, purposeful killing. Had a lesser-included offense in those – in the other case or not? No, he did not have it in the first trial. He did have it in the second trial. But the jury – Well, they got the same verdict, although that's absolutely right. Exactly. And there is one critical issue in this case, one critical fact in this case, one critical distinction between Barker's case and Kelly, and that's the punch. The testimony was that Barker ran up at a full sprint behind the victim and sucker-punched him in the back of the head and knocked him to the – and he cracked his head on the pavement when he fell down. And I think that was the basis of the jury deciding on intentional murder as opposed to just felony murder. So you don't have a situation – well, basically what you're presented with is a situation where you have to convince a jury that your client did not do anything in pursuing a total acquittal strategy when you have all these witnesses arrayed against him, you have no corroboration on his part, or you have the alternative of convincing the jury that your client didn't kill the victim. What about the lack of Mr. Koenig's DNA on Mr. Kelly's pants? No, there was DNA. There was? Yes, there was DNA found on Kelly's pants leg, which didn't corroborate a kick, that he had kicked him at some point in time. But it still allowed the opportunity for the defense to argue that, yes, he might have done something.  Well, it was unreasonable for him to ask for lesser included instructions because it would have required him to call his client a liar. And that's not necessary in this case. We argue in the alternative all the time. And there was a very easy alternative argument to make in this case. You just tell the jury, okay, you've heard the testimony from the various witnesses as to what happened that night, and you have to decide who to believe.  And ignoring all the contradictions in their testimony and assuming they're telling the truth, Mr. Barker is not guilty of the crimes with which he's charged, and then you go on with the lesser included offenses. So I think that in this case, given all the information before the attorney, all the information he had in his possession, the pursuit of an all or nothing strategy of total acquittal was unreasonable under Strickland because there was no possibility of that strategy succeeding. It didn't succeed for Barker, and it wasn't going to succeed for Kelly. There was just too much evidence contradicting his story. He had no evidence supporting that story. The charge on lesser included offenses would have resulted in a reversal. And we don't know what we're going to do. That's sufficient to show prejudice in this case. And the decision to proceed with an all or nothing strategy was simply unreasonable under Strickland, given the great benefit that he would have received from lesser included offenses. Let me just go back to the DNA statement in response to Judge Kohl's. Is there a distinction between the shoes and the pants? Because I thought that they introduced evidence that there was no DNA on the shoes. There was no DNA on the shoes. There was some DNA on his pants leg. Okay. But that is evidence in his favor in the sense that his argument is, hey, they're saying I kicked the guy. I'm not denying I was around it. And the lack of DNA on the shoes, you know, means if you kick the guy in the head, you would think you'd transfer some blood from one. I've tried a lot of cases in my time, and I certainly wouldn't like the argument to a jury that, well, my guy didn't do anything because he only had DNA on his pants leg, not his shoes, when there are ten witnesses saying that my guy kicked the victim. I just. Okay. But as I said, in this case, and I understand that these decisions are entitled to a great deal of deference. Okay. I understand that that happens. They are made oftentimes in the heat of the moment. I can assure you that the oral argument that I give on the ride back to Cleveland is going to be far more effective than the one I'm giving you now. It's the nature of the beast. Your time has expired. Okay. Thank you, Your Honor. Appreciate your argument. Thank you. Good morning. May it please the Court. I'm Stephanie Watson on behalf of the warden, and we request that the district court decision be affirmed in this case. I almost don't know where to start because of all the corrections in the record that I need to make. The first one I think I'll just start with is that the issue that Mr. Kelly raised in the court below and in his petition before the district court was not any pretrial strategic decision about what kind of defense to raise. It was never a complaint that his counsel was ineffective for choosing the particular trial strategy that was raised, making that decision prior to trial. The claim that he raised was the entirely separate post-trial, post-evidentiary portion of the trial claim that his counsel did not request a lesser included offense instruction after the evidence that was actually portrayed during the trial. The district court correctly noted that is an entirely separate claim of ineffective trial counsel that was never presented to the state courts, in fact was only presented for the first time in his traverse in the district court. So setting aside that claim, that claim is clearly defaulted. And his pretrial strategic theory of the case has never been presented ever until his traverse before this court. That claim is clearly defaulted. The way that you get to that is you have to say that appellate counsel was ineffective in order to open that door. Absolutely. Appellate counsel failed to raise that and therefore you get to open it up again. If you can, by the Supreme Court's decision in Edwards v. Carpenter, if you can prove ineffective assistance of appellate counsel, but you can't do that here. The reason why the trial strategy was sound is because, not just because Mr. Barker's case was before Mr. Kelly's, and the two theories of defense were entirely different. Mr. Barker testified, yeah, I did kick the guy. I just didn't kick him hard enough to kill him. And his attorney did request the lesser included offense instruction because that's the theory of defense and that's the evidence that was portrayed at trial. However, Mr. Kelly chose the exact opposite theory of defense. He said, I never touched the guy. I never touched that guy. I touched this guy over here and it was his blood that was found on my pants. But I never touched Carnage. I never kicked, punched, nothing. And that testimony, that pre-trial strategic theory of his case, was not just supported by Mr. Kelly's testimony at trial. It was supported by the testimony that my opposing counsel mentioned here. There was additional eyewitness testimony that saw Mr. Barker, his co-defendant, run and strike the victim in the head, blindsiding him, knocking him to the ground, and cracking his skull on the ground. That was testimony that was also supported by the coroner's cause of death, which was a blunt force trauma to the head, which the witnesses testified they saw the other guy do. And the other guy said, yeah, I did. I just didn't mean to kill him. And finally, the blood evidence that was found on Mr. Kelly was not the victim, Mr. Carnage's. It was another person named Mr. Chelko, who he admitted that he kicked. So there was plenty of evidence to support a very sound, reasonable trial strategy of all or nothing, not just his own testimony, additional witness testimony, seeing some other guy strike the fatal blow. The coroner's report was supported the cause of death was because of that fatal blow, and there was no DNA evidence of the victim found on Mr. Kelly. But there were witnesses who said that Kelly was kicking the victim, right? There certainly were other additional, there were many witnesses. There were witnesses that did say that Mr. Kelly did touch the victim, but he chose to go with the forensic evidence. I don't know if he was a fan of the CSI age or what, but he made the decision to testify, wasn't me, was him. He's already been convicted of it. A witness saw him strike the fatal blow. The coroner said that was the fatal blow, and I didn't have any blood on me. It was a gamble. Yes, it was a gamble. He didn't have any blood on me. I don't have any of his blood. Any of his blood on me. That's right, any of the victim's blood on him. It was a gamble, yes, but it would have reaped extensive great rewards because he would have been completely scot-free. And the Constitution does not require a successful defense. The Constitution only requires a competent defense. And in this particular case, this defense was sound and reasonable, and under the double-deference ADEPA standard of Strickland and Harrington, it's not even a Strickland analysis. It's whether or not the state court's determination, whether there's any reasonable argument supporting the state court's determination. And there are plenty of ample reasonable arguments in this case that would support an appellate counsel cannot being effective for failing to raise an entirely meritless claim. But you admit that if it is a valid claim, that appellate counsel was ineffective for failing to raise it. No, it is a complete no. Appellate counsel cannot be ineffective when they choose to not raise a claim that has no merit. No, but if the claim does have merit, you're admitting it would be ineffective. If the claim does have merit, it can be. If they can demonstrate prejudice, it would have changed the outcome of the result of the case. Because the Ohio court suggested that they need to bring it up in a post-conviction. Correct. The Ohio court, you know, the facts of this case, the only, in my opinion, the only snafu in this case that turns this case from a run-of-the-mill, this is a Davey v. Mitchell, Garner v. Mitchell, White v. Mitchell, you can't preserve the underlying claim in a 26B action. It's defaulted, period. The only snafu in this case, in my opinion, must be the fact that there was a husband and wife team here that was the trial and appellate counsel. However, this appellate lawyer did not feel any conflict because she indeed did raise several instances of her husband's ineffectiveness as a trial attorney in the direct appeal. So she didn't feel a conflict. And as I stated in, I think it was footnote four of my brief, the Ohio law is not the only part of the Ohio law that is clear from the Ohio Supreme Court is that a lawyer is not required to raise their own ineffectiveness and that by not raising their own ineffectiveness, that claim is not foreclosed by res judicata. They can bring it in a post-conviction petition. Here, she didn't feel that she was suffering under any conflict, and yet the court of appeals said we're not going to look at these claims. We think it's best case practices for this claim to be raised in a post-conviction petition. She chose not to do it in the post-conviction petition because it's not a valid claim. It wasn't a valid claim, and you can't be ineffective for failing to raise one. Mr. Kelly did have a timely post-conviction petition with counsel that post-conviction petition did not raise any ineffective trial counsel claims. That was not the wife that did that one? No, that was the trial counsel, correct. But once the court of appeals decision came out, there were seven months until that post-conviction petition was ultimately decided by the trial court. So once they were on notice, hey, you can't raise any, we're not going to let you raise any ineffective trial counsel claims here because we think there's a conflict because you're married. Go to post-conviction. These counsel were retained. These weren't appointed counsel. Kelly could have retained additional counsel if he wanted to raise this claim, which wasn't even a claim until his traverse in habeas. He could have filed a pro se petition on his own. None of these things happened. And even if that claim had been raised in post-conviction properly, it still defaulted because he never appealed his post-conviction decision, and he can't now under Ohio law. So even if the claim had been raised in post-conviction, it still defaulted. I guess if the court doesn't have any other questions,  I believe that under no circumstances may Mr. Kelly succeed on his current claims of ineffective trial counsel. It's defaulted under whichever theory you look at it, and his ineffective appellate counsel claim is meritless and entitled to a deeper deference. And I thank you for your time. Thank you. Let's clarify for the moment this bit about not presenting this claim until the traverse. This claim was presented in the 26B because this claim, the failure to request lesser included instructions and the pursuit of total acquittal are part and parcel of the same strategy. You can't pursue one without the other. That was the claim made in the 26B. That's the claim that I made, that the pursuit of the all or nothing strategy and the failure to request lesser included instructions was part of the same strategic decision. There was a merits decision on this case, so I don't see how we talk about procedural default. The whole purpose for the procedural default doctrine for the exhaustion and fair presentation doctrines is comedy. We want the state courts to be allowed to clean up their own mess, to put it in their vernacular. The state court had that. You have a merits decision in this case. I don't think it's appropriate to sit here and claim, well, they procedurally defaulted something when they gave the state court the opportunity to pass on the precise question that I'm addressing here today and that was appealed to the highest state court. So I don't think we have a procedural default issue. I don't think that we have a situation where we're presenting different claims. Now, yes, there was difference, and I apologize for the error that I made with regard to the DNA evidence. It's been some time since I read the transcript and it's rather lengthy. We're all on the same page now. Yeah, yeah, yeah, yeah. We are, we are. But the idea that this gave some benefit to Barker in the fact that, I'm sorry, to Kelly in the fact that Barker had the one punch thing, I think that argues to the contrary. I think that points out the unreasonableness of the trial strategy of the defendant's attorney. Because, yes, the jury found that he did that punch and that lends itself to the argument that, well, yes, I may have kicked him, I may have assaulted him, it may have been reckless homicide, but it wasn't murder. Barker's the one that killed him. And that's the strategy that you have to pursue in this case. In light of the evidence against him, there is no way that a jury is going to disbelieve ten people that say they saw your client kick and hit the victim. There's no way that's going to happen, and there is no way that you can walk away from a three-year potential sentence and put your client in prison for 15 to life. Did Kelly testify that he may have kicked him? No. No, he absolutely. That's an argument for the counsel. Yeah. He absolutely denied any contact whatsoever with the victim. He says that he never touched him. And why isn't the DNA evidence wholly consistent with that? Yeah, there's a fight going on. I squared up. I may have kicked Chilko. In fact, there's good evidence I kicked Chilko. There's no evidence at all forensically that I kicked this guy. Yeah, but the problem with that is that absence of evidence isn't evidence of absence. Just because you don't have DNA. A lot of jurors didn't take Philosophy 101. I always ask. But, you know, again, yes, that's in his favor, but you still have these ten witnesses who absolutely contradict him on every single point. The jury could easily believe, yes, he didn't kick him to the point where he'd wind up with blood on his pants or his shoes, but he did kick him. That's what these witnesses said. And so I just, again, I don't believe that this was a reasonable trial strategy under Strickland, and I would ask you to reverse the lower court. Thank you. Okay, thank you, Ms. Watson and Mr. Bensing, for your arguments this morning. Very much appreciate them. The case will be submitted. You may call the next case.